(Decided 29th January, 1879.)

---

THE APPEAL TAX COURT OF BALTIMORE CITY *vs.* THE WESTERN MARYLAND RAILROAD COMPANY. SAME *vs.* THE UNION RAILROAD COMPANY OF BALTIMORE.

*Construction of the Acts of 1878, ch. 413, 1874, ch. 483, 1876, chaps. 260 and 340, and of 1876, ch. 159—When an Act allowed to have a Retroactive Operation—Repeal of an Act not to affect Acquired Rights, nor Annul acts done under it—How a Duty arising under a Repealed Act, Enforced—The Doctrine of Implied Repeal—Assessments under the Act of 1876, ch. 260, not affected by the Repeals in the Act of 1878, ch. 413—Assessment of Leasehold Interest, where the Reversion, not liable to be taxed, is in the Mayor and City*

Appeal Tax Court of Balt. City *vs.* Western Md. R. R. Co.
Same *vs.* Union R. R. Co. of Baltimore.

*Council of Baltimore—Principal Business Office, Situs for Assessment of Rolling Stock of a Railroad Company—Valuation of the Tunnel and Bridges of the Union Railroad Company—Easement Enjoyed in the Bed of a Street, to be assessed and taxed as Real Estate.*

At the time the Act of 1878, ch. 413, became a law, the matters of the petitions of the appellees, in proceedings under the Act of 1876, ch. 260, sec. 28, were pending in the Court below, undecided. HELD:

That the repeal of the law, under which the property of the appellees was included in the assessment, did not render ineffectual and nugatory what had been done under the law with respect to the property in question prior to the repeal; and that the Act of 1878, ch. 413, could not have a retroactive operation.

Before a statute can be allowed to have a retroactive operation, the Court must see that the words are so clear, strong and imperative in their retrospective expression, that no other meaning can be attached to them, or that the plain intention of the Legislature could not otherwise be gratified.

Where rights are acquired under a statute in the nature of a contract, or where there is a grant of power, a repeal of the statute will not divest the right or interest acquired, nor annul acts done under it. If the appellees are liable to be taxed as owners of the property in question, a duty has arisen upon the the assessment made under the Act of 1876, ch. 260, to pay the taxes levied; and such duty could be enforced by an action at law, as upon an implied *assumpsit*, notwithstanding the repeal of that Act.

The Act of 1876, ch. 159, was not repealed by implication by the Act of 1876, ch. 260. All the provisions of the two Acts can stand together.

The general doctrine on the subject of implied repeal is, that where there are two Acts on the same subject, both are to be given effect, if possible. If, however, the two Acts are plainly repugnant to each other in any of their provisions, the later Act, without any repealing clause, will operate to the extent of the repugnancy as a repeal of the first; and even where two Acts are not, in express terms, repugnant, yet, if the later Act covers the whole subject of the first Act, and embraces new provisions, plainly showing that it was intended as a substitute for the first Act, it will operate as a repeal of that Act.

Appeal Tax Court of Balt. City *vs.* Western Md. R. R. Co.
Same *vs.* Union R. R. Co. of Baltimore.

Where the powers or directions contained in several Acts are such as may well subsist together, a repeal by implication is never declared.

The repeal by the Act of 1878, ch. 413, of the Act of 1874, ch. 483, sub-sec. 2, as amended by the Act of 1876, ch. 260, and of the Act of 1874, ch. 483, sub-sec. 3, as amended by the Act of 1876, ch. 340, did not annul the assessment made of the property of the appellees under the Act of 1876, ch. 260; but those sections as thus amended, only re-adjusted the basis of taxation for future levies, for both State and municipal purposes.

Where the Western Maryland Railroad Company held and occupied real property under an Ordinance of the Mayor and City Council of Baltimore, which stipulated for a formal lease from the city for ninety-nine years, renewable forever, at a certain rental, of the property in question to the company, but no such lease had been executed, though the city was willing to execute it, the company being entitled to receive it; in proceedings under the Act of 1876, ch. 260, sec. 28, it was HELD:

That the company must be regarded as the substantial owner of the leasehold interest in the property, and was liable to be assessed with the value of the leasehold interest, subject to the rental fixed by the ordinance. The reversion belonging to the city, was not liable to be taxed.

It being conceded that the principal business office, and also the principal station of the Western Maryland Railroad Company were located in the eighth ward of the City of Baltimore, the only practicable place for the assessment of the rolling stock of the company, in the absence of some positive rule of distribution and apportionment prescribed by the Legislature, was the place of the domicile as thus fixed.

Under the Act of 1876, ch. 159, unrepealed by the Act of 1876, ch. 260, the tunnel forming a part of the roadway of the Union Railroad Company, and the bridges on the line of the road were not objects of separate valuation and assessment. It was only the road as such, irrespective of the tunnel or bridges that should have been valued or assessed; that part of the road running through the tunnel to be valued and assessed at the same rate that any other equal portion of the road might be valued.

The appellee, the Union Railroad Company, has an easement in the way occupied by its road, and whether under or over a public

street, it is an element of value to the road, and as such should be included in the valuation of the road itself. An easement enjoyed in the bed of a public street may be assessed and taxed as real estate.

APPEALS from the Baltimore City Court.

On 26th July, 1877, the Western Maryland Railroad Company filed a petition in the Baltimore City Court to have the following property stricken from the list of property valued and assessed against the petitioner, under the Act of 1876, ch. 260; that is to say: A lot, Buren and Falls Streets and Liberty Alley; improvements, round-house and turn-table; lot N. W. corner Hillen and Exeter Streets, depot, round-house, cars, engines, tracks, &c., in the eighth ward of the City of Baltimore.

The petition further averred, that it was not the owner of the lot of ground and improvements in the eighth ward, mentioned in said assessment, but that the same were the property of the Mayor and City Council of Baltimore, and that the petitioner had merely a contract for the lease of the same, under an Ordinance passed by the Mayor and City Council, to enable the Finance Commissioners of the city to purchase and improve the lot, for the purpose of leasing the same to the petitioner, and that not only was the petitioner not the owner of the said property, but it was not required by the terms of its contract to pay any taxes on said property, in addition to the annual rent. And it further averred, that it sought to procure a lease of the same at the rate of six *per centum* upon the cost, and it was required to pay a rental at the rate of eight *per centum*, the reason assigned by the officers of the city being, that the petitioner would not be required to pay the taxes, and that as the property would virtually be withdrawn from taxation, the petitioner should be required to pay two *per centum per annum*

additional, to the Mayor and City Council of Baltimore, as part of the rental, as an equivalent for the taxes which would have been collected from the property, if it had not been purchased by said Mayor and City Council.

It further averred, that it had no cars and engines, which were fixed in the eighth ward of the City of Baltimore, and no separate assessment had been made of any, but the same had been included roughly with said depot, and that it was impossible to separate the values of any engines and cars, the numbers of which were not given, from said general assessment of property not belonging to the petitioner, and that no such assessment of engines and cars was lawful or could be regarded otherwise than a nullity; the petition, therefore, prayed that such engines and cars might also be stricken from the list.

On this petition, duly sworn to, and the answer of the Appeal Tax Court, which averred that the petitioner was rightfully assessed, the Court below (PINKNEY, J.,) granted the relief prayed; and the respondent appealed.

The petition of the Union Railroad Company of Baltimore, to the same Court was filed 14th July, 1877.

It averred, that the petitioner had constructed, and operated a line of railway from a point near the Belvidere bridge, in the City of Baltimore, to tide water, at Canton, partly within the limits of Baltimore City, and partly in Baltimore County; that the whole length of the said railway to Canton was $5\frac{10}{100}$ miles, and there was also a connection with the tracks of the Philadelphia, Wilmington and Baltimore Railroad, lying entirely in Baltimore County; that the tracks of said railway, within said city, were, to a considerable extent, constructed in a tunnel under the bed of Hoffman Street, a public highway of the said city, and a portion of the road within said city, not in tunnel, was also, to a considerable extent, within the limits of public highways; and that between the

point of beginning, near Belvidere bridge, and the Harford road, the whole length of road was 3100 feet, of which 2062 feet were constructed in said tunnel; that from the Harford road to Loney's lane, the eastern limits of the said city, the whole length of road was 8645 feet, of which 1348 feet were in the tunnel.

The petitioner prayed, that the assessments of the road bed tunnel from North Street to the Harford road, and from the Harford road to Loney's lane, be stricken from the list of property valued to the petitioner.

On this petition, duly sworn to, and the answer thereto, the Court below (PINKNEY, J.,) granted the relief prayed; and the respondent appealed.

The causes were argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*A. Leo Knott, State's Attorney for Baltimore City,* and *C. J. M. Gwinn, Attorney General,* for the appellant.

*As to the Western Maryland Railroad Company.*

The property belonging to the appellee, permanently located in the eighth ward of Baltimore City, was properly valued to the appellee, as its owner, in that ward. (1876, ch. 260, sec. 17.)

Under the section last cited, all personal property belonging to the appellee not permanently located in another city or county of this State, was required to be valued to it in the assessment district in which it was a resident.

A corporation is an inhabitant of the particular locality in a State in which it has its principal office. 2 *Coke's Inst.,* 703; *Angell & Ames on Corporations,* 8th Ed., sec. 107.

The presumption of law is, in the absence of proof to the contrary, that the assessments returned were made

280          MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Western Md. R. R. Co.
Same *vs.* Union R. R. Co. of Baltimore.

in the particular locality in which the appellee had its principal office. *Cooley on Taxation,* 195.

The valuation of the property of the appellee, which the Act of 1876, ch. 260, required to be made, was essential, because it was a necessary basis for the taxation by counties and municipalities within this State, of the real and personal property of railroad companies working their roads by steam, which had been authorized by the Act of 1876, ch. 159. It was essential, because it supplied the Comptroller with the elements of the *minimum* standard, by which he was required to be governed in assessing the value of the shares of stocks in such companies, under the Act of 1874, ch. 483, sec. 87.

This Court has recognized, in the case of the *Phila., Wilm. and Balto. R. R. Co. vs. Bayless,* 2 *Gill,* 357, that fixed property, when in the ownership of a railroad company, is subject, in common with all other property of the same kind in that locality, to county or municipal taxation, unless exempted therefrom by legislative enactment. The cases of *People vs. Comm'rs of Taxes,* 17 *N. Y. Sup. Ct. Rep.,* 210; *People vs. Beardsley,* 52 *Barb.,* (*N. Y.,*) 105, and *People vs. Cassity,* 2 *Lans.,* 294, tend to the same conclusion.

As the fixed property assessed to the appellee was not exempted from taxation, and was required by law to be valued to the appellee, for the purposes of county and municipal taxation, and as a standard for the ascertainment of stock values, such fixed property ought not to have been stricken from the general list of property valued to the appellee.

The only questions in this case are, therefore, first, whether the appellee was the owner of these various properties thus valued to it, in such sense as to justify the valuations of the particular properties to it as owner; and, secondly, whether the properties so valued to it, or any part of them, were exempted from taxation.

Upon the first point.   It is not denied that the appellee
was, and is the owner of the lot on Buren and Falls
Streets, and of the improvements thereon, and of the
cars, engines and tracks valued to it.   These prop-
erties ought not, therefore, to have been stricken from
the lists of property valued to the appellee.   It is con-
tended, however, that the appellee was not the taxable
owner of the ground and depot buildings at the corner of
Hillen and Exeter Streets, in the eighth ward of Balti-
more City, but that the City of Baltimore was the owner
of this property, the appellee having only a contract for
the lease of the property, and that the property being
owned by the City of Baltimore, was exempted from
taxation.   (1876, ch. 260, sec. 2.)

It will be seen by Ordinance No. 97 of the Mayor and
City Council, approved May 24th, 1875, that this property
is held by the appellee under a peculiar arrangement.
The appellee is treated in that ordinance as lessee of the
property, for the term of ninety-nine years, renewable for-
ever, at an annual rent, payable in monthly instalments
to the City of Baltimore, equal to eight *per cent.* upon the
amount which the city invested in the purchase of said
ground, and in the erection thereon of the passenger and
freight depot, engine house, tracks and appurtenances,
under the provisions of said ordinance.   The appellee,
under the terms of said ordinance, has a right at any
time to extinguish the rent stipulated to be paid, and to
become entitled to the exclusive ownership of the whole
property, by repaying to the city the amount which it has
invested in said ground and improvements.   It is provided
in said ordinance, that one-eighth part of the rent of the
property so paid monthly to the City of Baltimore, shall
constitute a sinking fund, in the hands of the Commis-
sioners of Finance of said city, which, with the interest

thereon, shall, when the appellee desires to extinguish the rent, be accounted part payment, to the extent of the amount so invested, of the cost of said property and improvements, so agreed upon as the price of the fee.

Inasmuch as under this arrangement the appellee, in fact, pays in each year to the City of Baltimore, in addition to what is called rent, one *per cent.* of the agreed price of the property, and is allowed interest on the part of the purchase money so paid, which instalment, with interest, must in a certain number of years, amount to the price agreed to be paid for the fee, it is clear that the contract evidenced by the ordinance, was a contract for the sale to the appellee of the ground and improvements to which the ordinance refers. The remaining seven *per cent. per annum* on the cost of the buildings and improvements, referred to in the ordinance as rent, is in fact interest upon unpaid purchase money—and the covenants to keep the improvements in repair and to insure the buildings, were intended to protect the vendor against loss, in case it was obliged, by the default of the appellee, to assert its rights over the property.

Property in Baltimore City held under a lease for ninety-nine years, renewable forever, is properly treated under our taxing system as the property of the lessee, and that as *such* it ought to be valued, in its entirety, to such lessee; and that the fact that the fee of the property so leased, belongs to the City of Baltimore, and that the rent reserved in said lease is payable to said city, does not prevent such property from being valued as an entirety to such lessee. 1 *Code, Art.* 81, *sec.* 73, 1874, *ch.* 483, *sec.* 65.

The effect of a lease for ninety-nine years, renewable forever, is to secure to the lessee a perpetual right to enjoy the value and profits of the leased premises, (*Banks vs. Haskie,* 45 *Md.,* 219,) and to charge him with the pay-

ment of taxes on the leased property as its taxable owner, even if the lease contains no covenant on his part to pay such taxes. *Hughes vs. Young*, 5 *G. & J.*, 67; *Cooley on Taxation*, 288; *Burroughs on Taxation*, 223. Such leases are treated as sales of the property for a series of terms, continuing forever, and as imposing on the person accepting them, all burdens affecting the property during the continuance of such terms. This is the theory upon which our system of State and municipal taxation is based. (*City Code*, 1869, *pp.* 923, 924, *sec.* 44.)

Upon the second point. The property leased by the City of Baltimore to the appellee, was not, for the reasons and authorities already cited, exempted, in any degree whatever, from taxation, because of the rent reserved to the City of Baltimore.

The cars and engines belonging to the appellee, which had their *situs* in the eighth ward of the City of Baltimore, ought not to have been stricken from the list of property valued to the appellee; all the engines and cars belonging to the appellee had their taxable *situs* in that ward.

If the question were new, we should rest this proposition upon the prevailing doctrine that such engines and cars are personal property, and have no other *situs* than the residence of their corporate owner. *Burroughs on Taxation*, 186, and cases cited in note 3; *Cooley on Taxation*, 273.

In support of the theory that engines and cars are to be regarded as personal property, we might rely upon many English decisions. It is enough to say that, in England, they are treated as mere investments of capital for the purpose of working a railroad—*Hodges on Railways*, 665—which constitute a *stock in trade*—*Ibid*, 629—and they cannot, therefore, be rated as parts of the realty, under the Statute of 43 Eliz., ch. 2, sec. 1. *Ibid*, 629, 665.

In this State a different ruling has been made. In State *vs. Northern Central Railway Co.,* 18 *Md.,* 217, 218, cars and engines, or, in one word, the rolling stock of a railroad company has been treated, not as personal property, but as *movable* fixtures.

The decision to which we have just referred, was made in the main, upon the authority of the case of *Farmers' Loan and Trust Co. vs. Hendrickson,* 25 *Barbour,* 484, in which the theory that such property was in the nature of realty was elaborately maintained.

The case in 25 *Barbour,* to which we have just referred, has certainly been overruled by the cases of *Stevens vs. Buffalo and N. Y. R. R. Co.,* 31 *Barb.,* 596; *Beardsley & Kirkland vs. Ontario Bank,* 31 *Barb.,* 619; and *Randall vs. Elwell,* 52 *N. Y.,* 521. We concede that the earlier ruling, and the ruling in this State, rests upon strong reasoning; and it will be for this Court to determine whether it will adhere to its former ruling, or not. It is not thought that this case requires any revision of the rule laid down in 18 *Md.,* 217, 218.

If the cars and engines belonging to a railway company are to be regarded as movable fixtures, they can have no *situs* for the purpose of taxation, other than the domicil of their owner, unless there is proof that the limit of their movement has been definitely confined within some locality separate from the domicil of such owner. There is no such proof in this case. It must be presumed that the cars and engines owned by the appellee are used, from day to day, in carrying freight and passengers to and from the *situs* of the appellee, which is in the City of Baltimore; and that they have no *situs* for purposes of taxation, except the taxable *situs* of the appellee, which is in the City of Baltimore.

Appeal Tax Court of Balt. City *vs.* Western Md. R. R. Co.
Same *vs.* Union R. R. Co. of Baltimore.

*As to the Union Railroad Company of Baltimore.*

Bridges are taxable properties. *O'Neal, et al. vs. Virginia and Maryland Bridge Company,* 18 *Md.,* 23. It is a fundamental rule of our State Government, that all classes or species of property shall be equally taxed, in proportion to the value of the respective properties forming parts of said classes, unless some different rule in relation to particular properties, has been created by an express and constitutional contract. *State vs. Stirling,* 20 *Md.,* 516; *State vs. Cumb. and Penn. R. R. Co.,* 40 *Md.,* 50.

Under the Assessment Act of 1866, ch. 157; under the Revenue Act of 1874, ch. 483; and under the Act of 1876, ch. 159, bridges over valleys or ravines, in which there was no stream, constructed by an individual or by a turnpike company, were subject to valuation and assessment according to their actual worth.

Under the same Acts, a tunnel would have been accounted an improvement, enhancing the value of a turnpike road or canal constructed through such tunnel; and a turnpike road or canal, of which such tunnel formed a part, would have been valued in such manner as to include the actual worth of such improvement. 1874, *ch.* 483, *sec.* 12.

The special provision in the Act of 1876, ch. 159, by which bridges over streams and tunnels upon railroad lines in this State are directed to be valued at the same rate that *any* other portion of the road leading to or from said bridge or tunnel is valued, without any reference to the actual value of the bridge or tunnel which was supposed to be valued, was, because of its application to particular properties only, a gross departure from the rule of equality in taxation, prescribed by our Bill of Rights. That provision must certainly, therefore, be held to have been always void.

The part of the Act of 1876, ch. 159, which remained
valid and operative, was the portion which directed the
property, real and personal, of every railroad company in
the State which worked its roads by steam, to be assessed
and taxed, *for county and municipal purposes,* in the same
manner as the property of individuals was assessed and
taxed.

The direction thus given was not superseded by the Act
of 1876, ch. 260. That Act framed with a purpose of
allowing its adjustment to the theory of the different
interests owned by a corporation and its shareholders,
required, by sec. 17, that all property permanently located
in any county of this State, or in the City of Baltimore,
should be valued and assessed, to the *owner* thereof, in the
assessment district in which such property was perman-
ently located. If a corporation was the owner of such
property, the Act imperatively required that such property
should be valued to its corporate owner. It was prudent
to make such requirement, because the current of the
decisions of the Supreme Court showed that the mind of
that Court was rapidly tending to the conclusion that such
property was taxable, as the property of the corporation,
even although the shares of such corporation were also
taxed in the hands of the shareholders. It was necessary
in any event, to make such requirement, because, unless
such property was valued to its corporate owner, it could
not be assessed and taxed for county and municipal pur-
poses, as was required by the Act of 1876, ch. 159; and it
was proper that such valuation should be made when the
general assessment was made.

There is no part of the Act of 1876, ch. 260, from which
any intention to repeal the Act of 1876, ch. 159, can be
deduced. The Act of 1876, ch. 260, is worded in affirma-
tive terms only. It does not require shares in railway
companies to be valued for the purposes of county and

municipal taxation. No incongruity or inconvenience can result from requiring the real and personal property of railroad companies to be valued and assessed for the purposes of county and municipal taxation, while the shares of such companies are valued and assessed for the purposes of State taxation. Such rule would be a uniform rule. It is certainly an equitable rule.

In the Act of 1876, ch. 159, the Legislature gave its attention to the particular subject of county and municipal taxation of the property of railroad companies, and provided for the imposition and collection of such taxes. When it enacted the general Act of 1876, ch. 260, it must be reasonably presumed not to have intended to alter the special provision made by the particular Act of 1876, ch. 159, for county and municipal taxation of the property of railroad companies, inasmuch as it did not manifest that intention in explicit language. The Act of 1876, ch. 260, must be read as silently excluding from its operation the case of connty and municipal taxation of the property of railroad companies, which had been provided for in the Act of 1876, ch. 159. *Maxwell on Interpretation of Statutes,* 157, 158; *State vs. Stirling,* 20 *Md.,* 519. It was not necessary that the State and local taxation should be imposed upon the same basis. *Insurance Company vs. Mayor & C. C. of Balt.,* 23 *Md.,* 311, 312.

These properties were valued to the corporation in part, unquestionably, for the reason that such properties being duly valued, might constitute portions of the standard by which the value of the stock of the corporation might, in any year, be computed for the purposes of State taxation, because it was provided by sec. 87 of the Act of 1874, ch. 483, that in no case should the stock of any corporation, in the aggregate, be valued at less than the full value of the real estate and chattels held by or belonging to such corporation in the several counties and City of Baltimore,

whether the shares of said stock were quoted on the market, or not. The Act of 1876, ch. 260, sec. 17, among other objects, attained the useful purpose of securing the means by which the standard of *minimum* valuation, prescribed by sec. 87 of the Act of 1874, ch. 483, could be reached.

*William A. Fisher*, for the Western Maryland Railroad Company.

1. At the time of the passage of the Act of 1878, ch. 413, there was no complete assessment of the property of the appellee.

The appeal taken under the provisions of sec. 28, of the Act of 1876, ch. 260, acted as a *supersedeas* of the action of the assessors and Board of Control and Review.

The appeal to the City Court is given without any requirement of bond or other condition, and its effect is the same as the granting of a writ of error at common law. It is a *supersedeas* by implication. *Bacon's Abridgment,* "*Supersedeas," sub-title Writ of Error.*

The assessment was inchoate at the time the Act of 1878 was passed, and it was impossible that the levy could be made and the taxes collected on it until the action of the Court should be obtained. The City Court was required to hear the petition at the session at which the same was filed, and at any time during the session. (*Sec. 28 of the Act of* 1876, *ch.* 160.) There never has been any lawful levy upon the property mentioned in the petition, and none can be made for any year, as before the making of the actual levy, the Act of 1878, ch. 413, has declared the property not liable to taxation. *N. S. vs. Tynen,* 11 *Wallace,* 88; *Webb vs. Ridgely,* 38 *Md.,* 364; *Montell vs. Con. Coal Co.,* 39 *Md.,* 164; *Dashiell vs. Mayor, &c.,* 45 *Md.,* 615; *Hampton vs. Com.,* 7 *Harris, Penn.,* 329; *Williams vs. Co. Coms.,* 35 *Maine,* 345; *Butler vs. Palmer,* 1 *Hill,* 324; *Bramble vs. State, use of Twilley,* 41 *Md.,* 442.

2. It cannot be maintained that the assessment should be retained, if the capital stock, and not the property, is liable to assessment and taxation.

The Act of 1876, had no other object than the assessment of property liable to *taxation.* (See the concluding clause of sec. 1.)

"All State and county taxes, and all taxes in the City of Baltimore," are required to be levied *upon* the *assessment. Sec.* 1, *of Art.* 81, *of the Code, as amended by Act of* 1874, *ch.* 483, *and Act of* 1878, *ch.* 413.

If, therefore, the Court had determined that the assessment was proper, the State and city officers must have collected the taxes upon it each year.

3. In any event, the property and improvements on Buren and Falls Streets and Liberty Alley, and at the corner of Hillen and Exeter Streets, in the City of Baltimore, could not be valued to the appellee. The law required that it should be valued to the party who was the owner at the time it was valued. (*Act of* 1876, *ch.* 260; *Miner vs. Ringue,* 110 *Mass.,* 47.) It was *then* the property of the Mayor and City Council of Baltimore, although it was in the possession of the appellee under the terms of the Ordinance No. 97, approved May 24th, 1875, mentioned in appellant's brief. It cannot be maintained that the taxing power can deal with anything but the the legal title.

The tracks in the eighth ward are also included in the arrangements for the lease, and are not taxable.

There was, in any event, no authority for the assessment of all the rolling stock of the company in the eighth ward of the City of Baltimore.

It is true that its principal office is in that ward, and probably it could be treated as having that *habitat,* and perhaps its personal property, if assessable, could be assessed in that ward. But its rolling stock is not per-

sonal property, it is a part of the realty.    *State vs. N. C. R. W. Co.*, 18 *Md.*, 217, 218.

If assessable at all, the rolling stock must be treated as part of the road, and its value distributed *pro rata* in the assessments, over the entire line of the road.

*William A. Fisher*, for the Union Railroad Company of Baltimore.

1. The appellee maintains that the Act of 1878, ch. 413, operated as a repeal *pro tanto* of the provisions of the Act of 1876, ch. 260, under which the assessment of the property was made, and that there is no authority for the maintenance of the assessment or the collection of taxes, except from the shares of capital stock.

2. It cannot be maintained, that if the Act of 1878 operates a repeal of the right to assess and tax the property, and imposes the tax solely upon the shares of capital stock, the change relates only to the State taxes, and leaves the city and the counties free to collect taxes under the provisions of the Act of 1876, ch. 159, upon the property of the company.   Such method of taxation would be so novel in this State, that the Courts will not impute the intention to the Legislature, unless it is clearly expressed.

A comparison of the language of the Act of 1876, ch. 159, with that of the Assessment Act, (1876, ch. 260,) and of the Act of 1874, ch. 483, then in force, will show that the Legislature of 1876, had no intention to apply any method of taxation to railroad property different from those applicable to other property.   On the contrary, the Act of 1876, ch. 159, merely reiterated the existing law in stating that railroad property should be assessed and taxed for county and municipal purposes in the same manner as the property of individuals; but it is clearly

denied, that any distinction should be made between the property of railroads and that of individuals.

3. The appellee denies that the assessment can be retained as ancillary to the duty of the Comptroller under sec. 87, of the Act of 1874, ch. 483.

4. The provisions of the Act of 1878, ch. 413, before referred to, operated as a repeal of the parts of the Act of 1876, ch. 159, relating to the taxation of corporate property.

The road of the appellee is built in a continuous tunnel from a point adjacent to Greenmount Avenue to a point eastward of Harford Avenue. The valuation of the tunnel was made in two districts, and hence the two separate valuations. The petition alleged, and it is not denied, that the valuations were made by taking the cost of constructing the tunnel.

The Court will not lightly interfere with the expressed will of the General Assembly, and will support it, if practicable. It is submitted that it is not difficult to do so. It cannot justly be controverted that the method of valuation actually adopted in this case was most onerous and oppressive.

A tunnel cannot give any additional value to the railway whatever may have been its cost. When completed, it is so much road-bed, and nothing more. It is an element of weakness in fact, because of the capital dead and literally buried in it, and because of the greater expense attendant upon its care and protection than upon any other like extent of open roadway.

It is true that bridges are sometimes regarded as taxable property, (18 *Md.*, 23,) and that under some circumstances, a tunnel might also be, as such, the subject of assessment. But this can be only when, as in the case in 23 *Md.*, the bridge or tunnel is a separate property, yielding tolls, or in some manner the object of separate usefulness and profit.

The Legislature possesses a large power and discretion in the ascertainment of taxable values. *Waters vs. State,* 1 *Gill,* 302; *State vs. Stirling,* 20 *Md.,* 516–17.

"The rule of equality and uniformity applies to such objects of taxation as may be selected by the Legislature as proper to bear the burthen." *Burroughs on Taxation,* 65–7; *Levy vs. Smith,* 4 *Florida,* 154; *Waters vs. State,* 1 *Gill,* 302; *Cooley on Con. Limitations,* (514)–(515.)

5. The appellee does not own the property and ought not to be assessed for it, as though it was seized of it. It has only the right to make use of the property, and receive the tolls authorized by its charter. The entire length of road in the City of Baltimore is 11,745 feet, of which 3410 are in a tunnel, all of which is under the bed of Hoffman Street, a street of the city, condemned, graded, paved and used by the public.

ALVEY, J., delivered the opinion of the Court.

Under the law by which these appeals are brought to this Court (Act 1876, ch. 260, secs. 28, 30,) there are but two questions open for consideration: 1st. Whether the property assessed is rightly assessed to the particular individual or corporation as the owner thereof; and 2ndly, where claim is made that particular property is exempt from taxation, whether such claim be well founded or not. All other questions arising under the assessment laws are left to the decision of the boards of revision to whom ample power is given to correct any errors that may be found to exist in the assessment.

Neither the Western Maryland Railroad Company nor the Union Railroad Company make any claim or pretence that their capital stock or the shares thereof in the hands of shareholders, are entitled to exemption. The Court below held the real and personal property of the appellees embraced in the assessments exempt, on the ground that,

by the terms of the statute their capital stock was liable to be assessed. And while that conclusion may be quite correct as to levies made, or that may be made, under the Act of 1878, ch. 413, the first question here is: What was the effect of the passage of that Act upon the assessment previously made under the Act of 1876, ch. 260, as the basis of the levy for the year 1877?

The appellees contend that the provisions of the Act of 1878, ch. 413, excluding from assessment the property, real and personal, of corporations incorporated by this State, having a capital stock divided into shares, and where such shares are subject to taxation as the property of the owners thereof, operated as a repeal *pro tanto* of the provisions of the general assessment Act of 1876, ch. 260, under which the assessment of the property in question was made, and that there is no authority for the maintenance of the assessment or the collection of taxes, except from the shares of capital stock. The Act of 1878, ch. 413, became a law on the 5th of April, 1878, and because at that time the matters of the petitions in the present cases were then pending in the Baltimore City Court, undecided, it is supposed that the repeal of the law under which the property was included in the assessment necessarily rendered ineffectual and nugatory all that had been done under the law, with respect to the property in question, prior to the repeal. In other words, according to the theory of the appellees, the process of assessing the particular property had not been completed before the law authorizing it had ceased to exist, and that with the law ceased all power to proceed farther with the assessment of that particular property.

But is this position maintainable? There is no ground whatever for contending that the Act of 1878, ch. 413, can have any retroactive operation. Before a statute can be allowed to have such operation, the Court must see that

the words are so clear, strong and imperative in their
retrospective expression, that no other meaning can be
.attached to them, or that the plain intention of the Legis-
lature could not be otherwise gratified.  In the language of
the statute under consideration there is not the slightest
warrant for any such construction.   The statute must,
therefore, be taken to refer to and speak exclusively of
future proceedings under it, leaving acts and proceedings
done under prior legislation to stand as they were at the
time of the passage of the repealing statute.   That being
so, what was the state and effect of the proceeding that had
taken place under that provision of the Act of 1876, ch.
260, repealed by the Act of 1878, ch. 413?   The assessors
had acted and completed their work and returned it to the
Board of Review and Control, and that Board had revised
and corrected the assessment and valuation, and had
returned the books and lists to the Appeal Tax Court, the
tribunal authorized to levy the taxes upon the assessment
and valuation thus made.   So far as the State's agents
entrusted with the work of making the assessment were
concerned, the assessment was then complete.   It is true,
the statute, by its 28th section, provides a mode by which
those conceiving themselves aggrieved in respect to the
questions of ownership of property assessed to them, or
exemptions denied to them, may have a review of those
questions.   But that proceeding forms no part of the
valuation and assessment proper, any more than the ordi-
nary application that may be made at any time to the
County Commissioners or the Appeal Tax Court to strike
from the levy list property that has perished, or to trans-
fer property to other parties who may have become liable
to pay the taxes thereon.   And the assessment being thus
complete, so far as the State was concerned, the 1st sub-
section of the Act of 1874, ch. 483, gave full authority for
making the levy upon it; and the right of the State and

of the City of Baltimore to the taxes leviable upon this assessment and valuation was complete before the repeal of the statute, subject only to the right of the parties assessed, in the mode pointed out, to show and establish that they were not legally subject to such assessment. It seems to be settled by authority, that where rights are acquired under a statute, in the nature of a contract, or where there is a grant of power, a repeal of the statute will not divest the right or interest acquired, or annul acts done under it. In the case of the *Steamship Co. vs. Joliffe*, 2 *Wall.*, 450, there was an action brought for half pilot fees, alleged to have accrued by operation of a provision in a statute which had been repealed; and it was held by the Supreme Court that when a right has arisen upon a transaction which has given rise to an implied contract, or a right in the nature of a contract, authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. So here, if the appellees are liable to be taxed as owners of the property, a duty has arisen upon the assessment made to pay the taxes levied, and such duty could be enforced by an action at law, as upon an implied assumpsit (*Mayor, &c. vs. Howard*, 6 *H. & J.*, 395,) notwithstanding the repeal of the statute. We are not however dealing with the question as to the mode of collecting the taxes, but simply with the question of the validity of the valuation and assessment as a basis upon which taxes might be levied.

The General Assessment Act of 1876, ch. 260, required the property, real and personal, of all corporations to be valued and assessed to the particular corporations, as well as the shares of their stock in the hands of the shareholders; and though the State by electing to tax the shares of stock in the hands of the shareholders, was precluded

from levying and collecting taxes from the corporations
in respect of their real and personal property, yet there
was a substantial necessity for valuing and assessing the
real and personal property of all corporations of the class
and character of the appellees, in view of the provisions of
the Act of 1876, ch. 159.   That Act provided that the
property, real and personal, of each and every railroad
company in this State, working their roads by steam,
should be assessed and taxed for county and municipal
purposes in the same manner as the property of individuals
was then assessed and taxed.   And though this particu-
lar provision of the Act has been modified or partially
repealed, because of its inconsistency or conflict with the
provisions of the Acts of 1878, ch. 413, and 1878, ch. 178,
yet it was not repealed by any repugnant provision in the
General Assessment Act of 1876, ch. 260.   The general
doctrine on the subject of implied repeals is, that where
there are two Acts on the same subject, both are to be
given effect, if possible.   If, however, the two Acts are
plainly repugnant to each other in any of their provisions,
the later Act, without any repealing clause, will operate
to the extent of the repugnancy as a repeal of the first;
and even where two Acts are not, in express terms, repug-
nant, yet, if the later Act covers the whole subject of the
first Act, and embraces new provisions, plainly showing
that it was intended as a substitute for the first Act,
it will operate as a repeal of that Act.   This doctrine,
however, only asserts that the former statute is impliedly
repealed, so far as the provisions of the last statute are
plainly repugnant to it, or so far as the later statute,
making new provisions, is plainly intended as a substi-
tute for it.   Therefore, where the powers or directions
contained in several Acts are such as may well subsist
together, a repeal by implication is never declared.   This
is substantially, the language of all the authorities.

*Henderson's Tobacco*, 11 *Wall.*, 652; *Canal Co. vs. Railroad Co.*, 4 *Gill & J.*, 1, 152; *Dwar. on St.*, 674. And applying these familiar principles in comparing the provisions of the Act of 1876, ch. 159, with those of the later Act of the same session, 1876, ch. 260, there does not appear any such repugnancy between them as to require us to say that any part or provision of the former Act is, by implication, repealed by the latter.

It follows from what we have said, that the repeal by the Act of 1878, ch. 413, of sub-section 2 of the Act of 1874, ch. 483, as that section was amended by the Act of 1876, ch. 260, and the sub-section 3 of the Act of 1874, ch. 483, as amended by the Act of 1876, ch. 340, did not annul and destroy the assessment made of the property in question, under the Act of 1876, ch. 260; but that those sections as thus amended only readjusted the basis of taxation for future levies, both for State and municipal purposes.

What we have thus far said is applicable to the case of the Western Maryland Railroad Company, and to that of the Union Railroad Company of Baltimore; but the next subjects of consideration are peculiar to the Western Maryland Railroad Company; and they are: 1st. Whether the property on Buren and Falls Streets and Liberty Alley, and at the córner of Hillen and Exeter Streets, in the City of Baltimore, could be lawfully assessed to the company as owner thereof; and 2ndly, Whether the cars, engines, tracks, &c., assessed to the company in the Eighth Ward of the City of Baltimore, were legally assessable to the company as of that locality.

1. The Railroad Company holds and occupies the permanent property assessed to it in the Eighth Ward or assessment district of the City of Baltimore, under the city Ordinance No. 97, dated the 24th of May, 1875, and under that Ordinance it is entitled to a formal lease from

the city of the property for ninety-nine years renewable forever, with the privilege of purchasing out the reversion upon payment of the entire outlay by the city. All the improvements upon the premises have been erected by the city, and the stipulation on the part of the Railroad Company is, that it will pay an annual rental, in monthly payments, equivalent to eight per cent. upon the investment by the city. No formal lease has yet been executed, but it is admitted that the company has performed the conditions entitling it to the lease, and that such lease will be executed whenever required by the company. It is in full possession of the premises under the agreement contained in the Ordinance for the lease, and there is no apparent reason why the formal lease has not been made. We think, however, the non-execution of the lease is quite immaterial; the company being in full possession under the Ordinance, and entitled to receive the lease, it must be regarded for practical purposes as the substantial owner of the leasehold interest in the property; and as the reversion belongs to the city, and therefore not liable to be taxed, we are of opinion that the company is liable to be assessed with the leasehold interest; that is to say, the value of the leasehold estate subject to the rental fixed by the Ordinance.

2. Then, as to the assessment of the rolling stock of the company, such as engines, cars, &c., and also the tracks within the Eighth Ward of the city, we think there was no error in the assessment with respect to the locality of this property. It is contended by the company that it is entitled to exemption from assessment, in the city of Baltimore, in respect to at least a part of its rolling stock; that such rolling stock should be treated as part of the road, and its value distributed *pro rata* in the assessments, along its entire line. But in this we do not agree. It is conceded that the principal business office and also the prin-

cipal station of the company are located in the Eighth
Ward of the city, and that must be taken as the place of
the domicile of the company for purposes of taxation.
Whether the engines, cars, &c., be regarded as personal
property, or as being so attached to the road and connected
therewith as to partake of the nature of real estate, can
make no difference, so far as the present question is con-
cerned; for whether we regard such rolling stock as be-
longing to the one species of property or the other, the
entire road being within the limits of the State, the only
practical place for assessment, in the absence of some
positive rule of distribution and apportionment prescribed
by the Legislature, is the place of the domicile of the
company. *See Burroughs on Taxation,* 186, *and cases
there cited.*

The next question for consideration is one that relates
exclusively to the Union Railroad Company; and that
question is, whether the company is exempt from assess-
ment for its tunnel and bridges as such, and the road-bed,
though not the superstructures thereon.

It is alleged by the appellee that the whole extent of
its road is from a point near Belvidere bridge, in the city
of Baltimore, to tide water at Canton,— a distance of $5\frac{10}{100}$
miles,—and that the road is partly within the limits of
the city, and partly in Baltimore county.   That the tracks
of the railway, within the city, are, to a considerable ex-
tent, constructed in a tunnel under the bed of Hoffman
Street, a public highway of the city, and the other portion
of the road within the city, not in tunnel, is, to a consid-
erable extent, within the limits of public highways.   That
between the point of beginning and the Harford road, the
whole length of railroad is 3100 feet, of which the length
of 2062 feet is constructed in tunnel; that from the Har-
ford road to Loney's lane, the eastern limits of the city,
the whole length of the road is 8645 feet, of which the

length of 1348 feet is in tunnel. It is then alleged that
the assessors for the Eighth Ward or assessment district of
the city of Baltimore, assessed the road-bed, together with
the tunnel, from Belvidere bridge to the Harford road, at
the sum of $300,000; and the assessors for the Seventh
Ward or assessment district of the city, assessed the road-
bed, together with the tunnel, from the Harford road to
the eastern limits of the city, at the sum of $350,000. The
truth of these allegations has not been controverted; in-
deed, their truth has been expressly conceded. The
assessment, as it now stands in the Appeal Tax Court,
appears thus: " From Harford av. to Loney's lane, seventh
ward, including tunnel, road-bed, rails, ties, bridges, cul-
verts, signal houses, &c., $350,000. Road-bed, tunnel,
North street to Harford road, $300,000." This was the
assessment made and returned under the General Assess-
ment Act of 1876, ch. 260.

By the Act of 1876, ch. 159, heretofore referred to, it
was provided that the property, real and personal, of
each and every railroad company in this State, working
their roads by steam, should be assessed and taxed for
county and municipal purposes, in the same manner as
the property of individuals was then assessed and taxed;
and by a distinct clause or proviso in that statute, it is
provided " that no extra assessment shall be made, and
and no extra or special tax shall be levied or collected on
any bridge or bridges over streams, or on any tunnel
forming any part of the roadway of any railroad or rail-
roads in this State; it being the meaning and intent of
this Act, that any bridge over streams, or any tunnel
forming a portion of the roadway of any said railroads,
shall be valued at the same rate that any other equal por-
tion of said road is valued."

As we have already said, this Act was not, or any por-
tion of it, repealed by the General Assessment Act of 1876,

ch. 260.    All the provisions of the two Acts can well stand together.    As contended by the Attorney-General, no incongruity or inconvenience could result from requiring the real and personal property of railroad companies to be valued and assessed for purposes of county and municipal taxation, while the shares of the capital stock of such companies were valued and assessed for State taxation alone.    And regarding the Act of 1876, ch. 159, as unrepealed by the General Assessment Act, it is quite plain that the tunnel, forming a part of the roadway, and the bridges in the line of the road, were not objects of separate valuation and assessment.    It is only the road as such, irrespective of the tunnel or bridges, that should have been valued and assessed; that part of the road running through the tunnel to be valued and assessed at the same rate that any other equal portion of the road may be valued.

But, while such is our opinion in regard to the manner of valuing the road with respect to the tunnel and bridges, we do not concur in the position of the appellee, that it should only be assessed with the superstructures on the bed of the road, irrespective of the road-bed itself, or any right or interest therein, because the road occupies a tunnel under a public street, or runs along the highways of the city.    The appellee has an easement in the way occupied by its road, and whether that easement be under or over the public street, it is an element of value to the road, and as such should be included in the valuation of the road itself.    But few of the railroad companies of the country have any thing more than a mere easement in the ways occupied by their roads, and we are not aware that it has ever been held that because the company did not own the freehold estate in the bed of the road, that nothing but the mere superstructures thereon could be assessed to the company.    The rule would seem to be

clearly otherwise, and that an easement enjoyed in the
bed of a public street may be assessed and taxed as real
estate. *People vs. Cassity*, 46 *N. Y.*, 49 ; *Appeal of N. B.
& M. R. Co.*, 32 *Cal.*, 499 ; *Providence Gas Co. vs. Thur-
ber*, 2 *R. I.*, 21.

Upon the whole, this Court is of opinion that the orders
appealed from in these cases should be reversed, and the
records remanded, that the assessments in question be
made to conform to the principles decided and announced
in this opinion, as the basis of the levy for the year 1877.

> *Orders reversed, and
> causes remanded.*

(Decided 30th January, 1879.)