# BALTIMORE CITY COURT

Filed May 6, 1903.

THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND FREDERICK-TOWN TURNPIKE ROAD
VS.
THE MAYOR AND CITY COUNCIL OF BALTIMORE AND THE JUDGES OF THE APPEAL TAX COURT.

*Findlay & Mackenzie* for complainants

*Charles W. Field* for respondents.

HARLAN, J.—

The Appeal Tax Court of Baltimore having assessed the easement or right of way of the Baltimore and Fredericktown Turnpike Road within the city limits at $10,000 per mile, the company has appealed to this court to have the assessment vacated and annulled; and the court is asked in advance of taking up the question of the propriety or justice of the amount of the assessment, to determine whether the easement or right of way of the company is assessable at all by the Appeal Tax Court under the present assessment laws of this State.

The Turnpike Company was chartered in 1804 to construct a turnpike from Baltimore to Fredericktown over a public highway. It is a corporation having a capital stock divided into shares, which have been regularly valued and assessed and the taxes thereon paid.

It seems proper to refer to, and set forth, certain portions of the general assessment law which have a bearing upon the determination of this cause.

Under Article 81, Section 2, of the Code of Public General Laws (see Poe's Supplement), it is provided that "all real properties in this State belonging to * * * any corporation incorporated by or under the laws of this State * * * are and shall be valued and assessed for the purpose of State, county and municipal taxation as the property of such (corporation), and such (corporation) shall pay such respective taxes thereon." The shares of capital stock of all other corporations (than railroad companies working their roads by steam power), incorporated under the laws of this State, "shall be valued and assessed *to the owners* thereof * * * at the same rate at which the same * * * shall be valued by the State Tax Commissioner."

Under Article 81, Section 4 (see Poe's Supplement), "the personal property of any corporation incorporated by this State, and having capital stock divided into shares, when said shares of said corporation are subject to taxation under the laws of this State," is exempt from assessment and taxation.

Under Article 81, Section 138, "in no case shall the stock of any corporation in the aggregate be valued at less than the full value of the real estate and chattels, real and personal, held by or belonging to said corporation," and under Section 141 of Article 81, it is provided:

"At the time of making the returns of stockholders to the county commissioners and Appeal Tax Court of Baltimore city, as required by law, the president or other proper officer of every bank or other incorporated institution, incorporated under the laws of this State, or doing business therein, and of every joint stock company doing business in this State shall furnish to the county commissioners of each county in which such bank or other incorporated institution or joint stock company shall own or possess any real property, and to the Appeal Tax Court of Baltimore city, if such bank or other incorporated institution or joint stock company shall own or possess any real property in said city, a true statement of such real property situated or located in such county or city, and such real property shall be valued and assessed by

said county commissioners and Appeal Tax Court, respectively, to the said bank or incorporated institution or joint stock company so owing the same, and the said county commissioners and Appeal Tax Court shall give duplicate certificates of such valuation and assessment to such president or other officer, who shall transmit one of such duplicate certificates with his return to the State Tax Commissioner, and State, county and city taxes shall be levied upon and paid by such bank or other incorporated institution or by such joint stock company on such assessment in the same manner as the same are levied upon and paid by individual owners of real property in such county or city; the respective taxable value of the shares of stock in such bank, corporation and joint stock companies shall be ascertained by the State Tax Commissioner in the manner following: He shall deduct the assessed value of such real property belonging to the said respective banks, corporations or joint stock companies from the aggregate value of all shares of such respective banks, corporations or joint stock companies and divide the remainder by the number of shares of the capital stock or shares of such respective banks, corporations or joint stock companies and the quotient shall be the taxable value of each of such respective shares for State purposes, and all State taxes thereon shall be paid as provided now or hereafter by law, and when the valuation and assessment of the shares of the capital stock or shares of such banks, corporations or joint stock companies shall have been finally determined or made for State purposes, the State Tax Commissioner shall certify to the county commissioners of each county where any of the stockholders or shareholders may reside, and to the Appeal Tax Court of Baltimore city, if any of said stockholders or shareholders reside in said city, and to the county commissioners of the county in which such bank, corporation or joint stock company is situated, or to the Appeal Tax Court of Baltimore city, if it is situated in said city, the assessed taxable value of such respective shares of stock or shares so ascertained as aforesaid. And the said taxable value of such respective shares of stock or shares in such banks, corporations or joint stock companies, owned by residents of this State and taxable within this State, shall for county and municipal purposes be valued to the owner thereof in the county or city in this State in which such owners shall respectively reside, and the said taxable value of such of said stock or shares as are held by non-residents of this State shall for county and municipal purposes be valued to the owners thereof in the county or city in which said bank, corporation or joint stock company is situated. But all county or municipal taxes assessed upon said respective taxable value of such respective shares of stock or shares shall be collected from such bank, corporation or joint stock company. And when so paid shall or may be charged by such bank, corporation or joint stock company to the account of such stockholders or shareholders, respectively, but it is expressly provided that all railroad companies working their roads by steam power, incorporated by or under the laws of this State, or any other State, Territory, District of Columbia or foreign country, and doing business in this State, shall respectively be subject to the annual State Tax upon their respective gross receipts within the State, prescribed by Section 146, which shall be paid and collected in a manner provided now or hereafter by law, and the real and personal taxable property belonging to such respective railroad companies shall be subject to county and municipal taxation to this State in the respective counties and cities in which such property is located, and where such respective railroad companies are subject to such gross receipts tax for State purposes, their shares of stock and real or personal property shall not be subject to taxation for State purposes. And when such real and personal property of such respective railroad companies is subject to county and municipal taxation, their respective shares of stock shall not be subject to county and municipal taxation. But the capital stock and property of all other corporations which are subject to a tax upon their gross receipts, other than railroad companies, shall be valued, assessed and taxed for State, county and municipal purposes like the capital stock and property of other corporations under this article." And

under Section 146 of Article 81, certain corporations, (of which the appellant is not one) are subject to a tax on gross receipts.

In the case of State vs. The Cumberland & Penna. R. R. Co., 40 Md. page 52, the Court of Appeals, in 1873, recognizing the plain truth that "the stock is the representative of the whole property of the corporation," said "although the State may elect to tax either the capital stock of the company, or the real and personal property of the company, yet it cannot tax both," and in the scheme of assessment provided in the present assessment law, as appears from the quotation hereinbefore set forth, it seems manifest that as to corporations such as the appellant it was the legislative intent that all of its property and rights would be reached and represented in the assessment and valuation of the capital stock, except "the real property situated and located in" some of the counties or in Baltimore city. The claim made by the Appeal Tax Court is that the easement or right of way of this Turnpike Company in one of the public streets of Baltimore city is real *property*, a true statement of which *should have been furnished to the Appeal Tax Court by the president of the corporation for each of the past four years*; and not having been so furnished, it can be valued and assessed for each of these years as *escaped real property* situated and located in Baltimore city. It follows, of course, from this contention, and is admitted, that if this easement had been returned and assessed as real property, the State Tax Commissioner, in ascertaining the respective taxable value of the shares of stock of this corporation, should have deducted the assessed value of this easement from the aggregate value of all the shares of its stock. That private easements and rights of way of a permanent kind may be regarded as real property is old doctrine, but the true question for solution in this case is *not whether provision could be made by law for assessing as real property an easement such as the defendant has, but whether such provision has been made*; or to state it differently, did the legislature, in providing that the real property of certain corporations situated and located in some of the counties or in Baltimore city should be locally as-

sessed and valued and such value deducted from the value of the capital stock in assessing and valuing the latter, have in contemplation under the terms, "real property situated and located in some of the counties or in Baltimore city," such an intangible incorporeal right as the easement of a turnpike company in a public highway?

What is the nature of the easement which this company enjoys, and which, it is said, should be valued and taxed as real property situated and located in Baltimore city?

In a leading case on this subject, Com. vs. Wilkinson, 16 Pick. (Mass.) 175, Shaw, C. J., says: "We think that a turnpike road is a public highway established by public authority for public use, and is to be regarded as a public easement, and not as private property. The only difference between this and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by public authority, and made at the expense of individuals in the first instance; and the cost of construction and maintenance is reimbursed by a toll, levied by public authority for the purpose. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other public highway."

For all the long period of years since the company was chartered in 1804, no attempt has been made to tax the easement of this Turnpike Company, or any other turnpike company, except as the same was reached in valuing and assessing its capital stock; nor have I been furnished with any case where the easement of a turnpike company has been valued and assessed *as such*, for purposes of taxation. That which gives value to the stock of the company is the franchise which it enjoys to charge tolls to those using the road in which it has an easement, and its real and personal property; and it is difficult to see how the easement is to be disassociated from the franchise for purposes of local assessment and taxation, and it is not pretended that the Appeal Tax Court can locally assess or tax the franchise.

It seems to me that what the legislature had in view in Section 141 of Article 81, under the terms "real property situated and located in such city or county," a true statement of which

was to be furnished to the local taxing authorities, for purposes of local assessment and taxation, and the assessed value of which should be deducted from the taxable value of the capital stock, was *corporeal* real property. This construction certainly accords with the uniform long-continued practice of the taxing departments of the State, county and city governments, which practice in itself is entitled to great weight, when continued without question for a long period of time, (see Mayor and City Council vs. Johnston, THE DAILY RECORD of April 8th, 1903), and is, moreover, reasonable and supported by the plain meaning given to the words "real property" in other portions of the assessment laws.

Thus, under Section 173, in making out the "schedule of all the real and personal property owned * * * every taxable person * * * shall specify, as far as may be practicable, the name or names of the tracts or parcels of land so described, and the number of acres or quantity of lands in each, and the value per acre, if in the counties, * * * (and) he shall separately value the improvements upon the respective tracts or parcels of real estate in the said several counties, so by him prepared; (and) in describing any lot or parcel of grounds in the city of Baltimore, or in any city in any county in this State, the said person shall specify as nearly as possible the precise location of each lot or parcel of land, giving as nearly as practicable the number of front feet in each lot or parcel of ground, and the depth of each lot or parcel of ground, and the rate per front foot at which the same is valued, and he·shall value separately the improvements upon each lot or parcel of ground in said city." And in Section 178, it is said: "Assessors shall personally inspect all real estate in their respective districts."

Intangible, incorporeal things are not capable of inspection. The property which is subjected to the easement can be seen, but the easement—the right—exists only in contemplation of law and cannot be seen or inspected. All freehold estates are real property, but we know that what is assessed is the corporeal property in which the estates exist, and that there never has been any practice in this State to value to the their respective owners for purposes of taxation, the several estates in the property where there are such.

In Appeal Tax Court vs. The Western Md. R. R. Co. et al., 50 Md. 301-2, the Court of Appeals said "that an easement enjoyed in the bed of a public street may be assessed and taxed as real estate." but as has been heretofore pointed out in this opinion, the question here is not whether this may be done, but whether the legislature meant it to be done under the words of Section 141. It must be remembered that the capital stock of railroads operating by steam is exempt from taxation, and that they are "subject to a gross receipt tax, and to county and municipal taxation upon their respective real and personal property in the respective counties and cities of this State;" and if the easement in their roads were not assessable as real property, it would escape taxation altogether, which is not the case with turnpikes whose easements do not escape taxation, but are properly reached in the value of their stock. Nor does Section 202, of Article 81, added by the Act of 1896, Chapter 143, in my judgment, change the pre-existing practice and require the taxation of the easements of turnpike companies in public streets as real estate. The only effect of that Act is to provide that tunnels forming a part of the roadway, and bridges in the line of railroads or turnpikes, shall not be the objects of separate valuation and assessment.

I have concluded that the easement of the appellant is not assessable by the Appeal Tax Court, and will sign an order accordingly.